Judge Underwood
delivered the opinion of the court.
This is an action of debt, brought upon the official bond of Griffith as a constable. The breaches of the condition of the bond assigned, are,
1st. Official misconduct on the part of Griffith as constable, in returning a forged delivery bond, with Clark’s name affixed as surety, knowing it to be such, endorsing the same, that the property had not been delivered, procuring execution thereon against Clark, and which he, Griffith, levied on Clark’s property, and sold the same.
2d. That Griffith, under color of his office, seized and sold three horses, the ptoperty of Clark, without any legal authority. And
After pleas have been should not be thereafter re-^r^fofthdr defectiveness-, b-t should be dewtMrrfti t0-
3d. That Griffith seized and sold -,three horses, the .property of Clark, without authority,^beinc in substance, the same breach as the second.
The defendants filed a demurrer to the declaration which was overruled. The demuner was withdrawn, ■and five pleas tiled. The first was, that the defendant 'Griffith did not break the condiiion of his bond as the plaintiff had complained; on which, issue was joined. The order peun-Uing the filing of the other pleas was set aside. The defendants then tendered the pleas, whica were rejected. A trial was had, and verdict and judgment rendered in favor of the plaintiff.
Many questions are made. Such as we deem important, will be considered.
The first question we shall noiice, is, that which brings in review the propriety of the decision of the' court rejecting the pleas marked from 2 to 5 inclusivo. These pleas purport to answer the second and third breaches of tile declaration, and they justify the seizing and selling the three horses in virtue of executions against Clark, which were placed in Griffith’s hands. We perceive no objection (o the form of the pleas which should have required their rejection. The/ do substantially make out a justification for taking and selling the horses, if the facts alleged are true.
We think the defendant ought to have been permitted to plead his justification affirmatively, and consequently, that the court erred in rejecting the pleas. Even if they were defective, as they had been filed, they should liave been demurred to, and ¡heir defects poinied out upon the demurrer. If the demurrer was sustained, then the defendants might have amended their pleas and the merits of the defence might thus have been attained. This practice, as it conduces to the ends of justice, is preferable to that of rejecting pleas, because they are deemed bad, especially after they have, been once regularly filed.
In support of the first breach assigned, the delivery bond returned by Griffith with the name of Clark thereto, as an obligor, was given in evidence. It was proved that Clark placed bis name upon a blank piece of paper, as Surety for Allen, and that it was agreed between Allen, Clark and.Gnffilh, that the latter should *320 thereafter RJI up a delivery bond for the property, ou which the executions had been levied, over the signaÍUí’es the two foimer. A delivery bond was return-accordingly, on which the justice of the peace issued executions in favor of two distinct pe;sons, who had been made joint obligees. This bond, and the executions which issued thereon, were quashed by the justice, after the sale of the three horses had been made in virtue of the executions. r fter the above evidence had been given, the rela:or moved the court to instruct the jury in substance, as follows; “that if Clark signed the paper purporting to be a delivery bond, when the paper was blank, and that Griffith filled up and wrote on said paper, ail the writing above the names of Allen and Clark, and if the jury find th it (dark never after the. filling up, acknowledged and delivered the writing as his act and deed, then they should find for the plain- .■«■., uu'
Where a per-¡-on pats his name on a olauk piece of paper and agrees that the up a delivery bond above ce SofficerU°’ commits no forgery, so acts within the scope his authority.
„„ . where a person signs a bo™? and tu?" thorizes (ho officer to fill it doesTifin0 good thhh, an d returns it ‘.to "aninjundcrs nrc committod, and by sued on*thVS" bond, such person sustewí!S »injuria,
The propriety of this instruction prescnis the second question. We are of opinion, that the court erred in giving it. The point in issue, was, whether the defen^aD*: Griffith had returned' a íabe and forged delivery bond, whereby Clark was injured. As Clark had put his name upon a blank piece of paper, and had agreed Griffith might fill up a delivery bond above the signature, there could be no forgery committed, so long as Clark (Griffith) acted within the scope of his authority. ^
It has not been shown that he departed from it in case' Whether the bond was valid as a delivery bond or not, need not be decided. However that may be, i f it was filled up in good faith by Griffith, under the agreement with Clark and Allen; and returned to the office of the justice in like good faith; even if blunázrs and mistakes had been committed so as to render it invalid,it could not be regarded as a false and forged bond, If Gaik sustained a loss under such circumstances, by reason of executions issued on the delivery h„!¡£j, he has, by signing a blank and giving authority to fils h op, produced the mischief by Ins own acts, and therefore, it should be regarded ns damnum absque injuria. Under this view of the case, it was erroneous i0 make the cause turn upon an acknowledgment and delivery of -the bond after it had been filled up, as was *321 done by the instruction. , The quashal of the bond and executions after the sale of the horses cannot affect the controversy.
Hanson, for plaintiff.
Wherefore, the judgment is reversed with costs, and the cause remanded for proceedings not inconsistent with this opinion.